UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CITY OF FERNLEY,<br><br>　　　　　　Petitioner,<br>　v.<br><br>UNITED STATES BUREAU OF RECLAMATION,<br><br>　　　　　　Respondent. | Case No. 3:20-cv-00221-MMD-CLB<br><br>ORDER |

**I.    SUMMARY**

Petitioner the City of Fernley ("Fernley") petitions the Court for a writ of mandamus ordering Respondent the United State Bureau of Reclamation ("Reclamation") "to extend the public comment period for the Truckee Canal Extraordinary Maintenance Project Draft Environmental Impact Statement ["DEIS"] to a date not sooner than 30 days after" Nevada Governor Steve Sisolak lifts the emergency declaration he issued regarding the novel coronavirus disease that has caused a pandemic ("COVID-19"), to allow for in-person meetings regarding the DEIS that Reclamation cancelled and instead held online because of COVID-19.[1] (ECF No. 1 at 14.) As further explained below, the Court declines Fernley's request because it lacks jurisdiction to provide Fernley with the extraordinary remedy of a writ of mandamus under these circumstances.

**II.    BACKGROUND**

Both Fernley, and some 450 individual homeowners there with their own wells, rely on water that leaks out of the Truckee Canal, which is an unlined, open ditch. (ECF No. 1 at 3-4.) The Truckee Canal breached in 2008, damaging Fernley. (*Id.* at 4.) This

---

[1]The Court also reviewed Reclamation's response (ECF No. 10), and Fernley's reply (ECF No. 12).

prompted Reclamation to initiate a project to repair and reinforce the Truckee Canal in the interest of avoiding future breaches and flooding. (*Id.*) Reclamation published a study in 2013 outlining three options for repairing the Truckee Canal, and ultimately chose the third option: "installing a geomembrane liner along the bottom and sides of the canal covered either by soil or cement." (*Id.* at 4-5.) This plan is "unacceptable to Fernley as it would shut off the recharge from the canal to the local groundwater aquifer[,]" meaning water will no longer leak out of the canal to feed Fernley's municipal water system and individual wells. (*Id.* at 5.)

Reclamation has been working on the plan since then. From October 2015 to January 2016, Reclamation held public meetings about its plan. (*Id.*) From February 2016 to August 2017, Reclamation focused on receiving input on its plan from other agencies and coming up with alternative plans to repair the Truckee Canal. (*Id.*) On August 31, 2017, the Secretary of the Interior issued Order 3355, which, in pertinent part, directed Reclamation to streamline its environmental review process and complete all Environmental Impact Statements ("EIS(s)") under the National Environmental Policy Act ("NEPA") within one year.[2] (*Id.* at 5.) In December 2018, Reclamation distributed an administrative draft of the DEIS to other agencies for review. (*Id.* at 5.)

On March 6, 2020, Reclamation released a public draft of the DEIS. (*Id.*) Reclamation gave the public 45 days to comment on the draft. (*Id.*) Reclamation also scheduled two public meetings, one in Fernley, and one in Fallon, for the end of March 2020. (*Id.* at 5-6.) However, Reclamation then cancelled the public meetings because of COVID-19 and instead set up a 'virtual public meeting' open for the duration of the public comment period, which also provides a contact number for the project manager and information about how people can request hard copies of the information available on the

---

[2]Fernley points out that Reclamation has not complied with this one-year deadline. (ECF No. 1 at 5.)

website.³ (*Id.* at 6; *see also* ECF No. 10 at 10-11, 10-1 at 4-6.) On March 19, 2020, Fernley sent Reclamation a letter requesting that Reclamation extend the public comment period on the DEIS and hold in-person public meetings once COVID-19 subsided. (ECF No. 1 at 6.) On April 6, 2020, Reclamation denied Fernley's request. (*Id.*) This petition for a writ of mandamus followed. (*Id.*)

Fernley basically asks the Court to order Reclamation to grant the request it previously declined—to extend the public comment period on the DEIS, and hold in-person public meetings on it when such meetings are possible again. (*Id.*)

### III.     DISCUSSION

Fernley relies on the All Writs Act, 28 U.S.C. §1651, and 28 U.S.C. § 1631, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof." (ECF No. 1 at 6-7.) However, "[m]andamus writs, as extraordinary remedies, are appropriate only when a federal officer, employee, or agency owes nondiscretionary duty to the plaintiff that is so plainly prescribed as to be free from doubt." *Stang v. I.R.S.*, 788 F.2d 564, 565 (9th Cir. 1986) (citation and internal quotation marks omitted); *see also Du v. Chertoff*, 559 F. Supp. 2d 1049, 1054 (N.D. Cal. 2008) (concluding that dismissal of a case for lack of mandamus jurisdiction is appropriate where there is no nondiscretionary, discrete action a federal agency was required to take).

To qualify for mandamus, a litigant must satisfy three requirements that courts have characterized as jurisdictional: (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists. *See, e.g.*, *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986) (holding the district court erred in granting a writ of mandamus against the BLM because the claim failed the second and third prongs of the mandamus test).⁴ "Whether each

---

³*Available at* https://www.usbr.gov/mp/lbao/programs/truckee-canal-eis/index.html and https://www.usbr.gov/mp/lbao/programs/truckee-canal-eis/index.html (last visited April 16, 2020). (ECF No. 10 at 10-11.)

⁴Fernley agrees it must satisfy these three requirements. (ECF No. 12 at 9.)

3

element of the three-part mandamus test is satisfied is a question of law." *See, e.g.*, *Ticheva v. Ashcroft*, 241 F. Supp. 2d 1115, 1117 (D. Nev. 2002) (quoting *Fallini*, 783 F.2d at 1345) (internal quotation marks and citation omitted) (holding that the court cannot compel Immigration and Naturalization Service to issue a visa). Where a litigant fails to satisfy any one of these three requirements, a court should dismiss for lack of jurisdiction. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

Fernley argues in pertinent part that Reclamation has a mandatory duty to receive comments from Fernley's domestic well owners who will be harmed by Reclamation's plan to line the Truckee Canal, who Fernley argues can only provide comment if Reclamation holds in-person public meetings—thus Fernley argues Reclamation must hold in-person meetings—and extend the public comment period on the DEIS to allow for that. (ECF No. 1 at 8-12.) Reclamation counters that Fernley seeks to improperly compel discretionary agency action, which this Court lacks jurisdiction to grant via a writ of mandamus. (ECF No. 10 at 17-23.) The Court agrees with Reclamation.

Contrary to Fernley's argument, the duties it seeks to impose on Reclamation are discretionary, rather than mandatory. (ECF No. 1 at 8-10 (making the argument, relying on 40 C.F.R. § 1506.6(a), 40 C.F.R. § 1503.1(a)(4), and 40 C.F.R. § 1506.6(c)(1)).)[5] None of the regulations Fernley relies on require that Reclamation extend a public comment period when extraordinary circumstances are present, nor do they require in-person public meetings on their face. *See* 40 C.F.R. § 1506.6(a) ("make diligent efforts"); 40 C.F.R. § 1503.1(a)(4) (requiring merely that the agency "[r]equest comments," and "solicit comments," which there is no dispute Reclamation has done here); 40 C.F.R. § 1506.6(c)(1) ("whenever appropriate"). Moreover, Reclamation persuasively argues in

---

[5] 40 C.F.R. § 1506.6(a) provides that agencies must "[m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures." 40 C.F.R. § 1503.1(a)(4) provides that an agency must, before finalizing its draft EIS, "[r]equest comments from the public, affirmatively soliciting comments from those persons or organizations who may be interested or affected." 40 C.F.R. § 1506.6(c)(1) provides that agencies must "[h]old or sponsor public hearings or public meetings whenever appropriate or in accordance with statutory requirements applicable to the agency, after considering whether, in pertinent part, there is "[s]ubstantial environmental controversy concerning the proposed action or substantial interest in holding the hearing."

response that the regulation governing the decision at the heart of Fernley's challenge here—declining to extend the public comment deadline on the DEIS—is 40 C.F.R. § 1506.10(d) (providing in pertinent part that "[t]he lead agency may extend prescribed periods[,] and "[f]ailure to file timely comments shall not be a sufficient reason for extending a period."). (ECF No. 10 at 19.) Thus, the regulations upon which Fernley relies do not appear to govern Reclamation's action that it seeks to challenge. And the regulation that does, 40 C.F.R. § 1506.10(d), is discretionary in nature because it uses the word 'may.' (ECF No. 10 at 19-20.) "[T]he use of the term 'may' bars a finding that the statute establishes a clear unambiguous duty . . . , and thus bars a mandamus action." *Tashima v. Admin. Office of U.S. Courts*, 967 F.2d 1264, 1271 (9th Cir. 1992); *see also Dahl v. Clark*, 600 F. Supp. 585, 595 (D. Nev. 1984) (finding that law and regulations governing wild horse grazing containing the term 'may' create purely discretionary duties precluding mandamus jurisdiction).

Fernley doubles-down in its reply brief on its argument that 40 C.F.R. § 1506.6(c) creates a mandatory duty to hold in-person public meetings. (ECF No. 12 at 5-7, 10.) But the Court is unpersuaded. To start, the very provision upon which Fernley relies includes the phrase "whenever appropriate." (*Id.* at 5 (quoting 40 C.F.R. § 1506.6(c)).) That suggests Reclamation only has to hold a public hearing or public meeting when Reclamation deems it appropriate, and therefore creates merely a discretionary duty. (ECF No. 10 at 12 (characterizing the regulation as creating a discretionary duty).) Here, Reclamation decided in-person meetings were no longer appropriate.[6] (*Id.* at 10, 22.) And the Court finds that decision was within Reclamation's discretion because the Court does not read 40 C.F.R. § 1506.6(c) to create a mandatory duty. Moreover, it appears likely the Ninth Circuit would agree. *See Sierra Club v. F.E.R.C.*, 754 F.2d 1506, 1510 (9th Cir.

---

[6]Fernley argues that Reclamation decided public meetings were appropriate, so is bound by that decision even after circumstances changed, but does not provide any support for its argument. (ECF No. 12 at 5.) And beyond finding it unsupported, the Court also finds this argument unpersuasive because nothing in 40 C.F.R. § 1506.6(c) appears to prohibit Reclamation from changing its mind in response to changing circumstances.

1985) (stating that the "whenever appropriate" language in 40 C.F.R. § 1506.6(c) means that hearings are not mandatory); *see also Jicarilla Apache Tribe of Indians v. Morton*, 471 F.2d 1275, 1284 (9th Cir. 1973) (noting when interpreting a precursor regulation that "[w]e can find no language in NEPA which would indicate that hearings are a requirement in all instances."); *Envt'l. Coal. of Ojai v. Brown*, 72 F.3d 1411, 1415 (9th Cir. 1995) (summarizing *Jicarilla Apache Tribe of Indians* as "refusing to imply a mandatory duty to hold a NEPA hearing where the regulations provided that NEPA hearings were discretionary" when interpreting 40 C.F.R. § 1506.6(b)(2), suggesting that the analysis in *Jicarilla Apache Tribe of Indians* would also apply to 40 C.F.R. § 1506.6(c)). The Court is therefore unpersuaded that any of Fernley's proffered regulations create the nondiscretionary duty on Reclamation's part required for the Court to have jurisdiction here.

In sum, the Court does not find that Reclamation violated a clear duty to act when it declined Fernley's request to extend the public comment period and hold in-person public meetings in lieu of the virtual public meeting it decided to hold instead. *See, e.g.*, *Fallini*, 783 F.2d at 1345 (listing this as one of three jurisdictional requirements). The Court therefore lacks jurisdiction over Fernley's petition for a writ of mandamus.[7] *See Burwell*, 812 F.3d at 189 (stating that courts should deny the petition for lack of jurisdiction if the petitioner cannot satisfy any one of the three requirements).

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

---

[7]The Court also notes Reclamation submitted the declaration of Terri Edwards, Reclamation's employee in charge of the DEIS, who explained that she received two requests to extend the comment period, but decided to deny them after considering a number of factors, including that it has already received extensive comment from Fernley and its citizens, and is well-aware of their concerns. (ECF No. 10-1 at 2-6.)

It is therefore ordered that Fernley's petition for a writ of mandamus (ECF No. 1) is denied.

It is further ordered that Fernley's emergency motion for expedited review (ECF No. 4) is denied as moot.

The Clerk of Court is directed to close this case.

DATED THIS 17th day of April 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE